## Sondles et al., Appellants, *v.* Johnson.

*Contract—Breach—Rescission—Suit in affirmance—Damages.*

Where a party rescinds a contract because of the other party's breach, he may sue for the breach, but he cannot rescind the contract and then sue in affirmance of it as though the contract were in full life.

Argued September 30, 1925. Appeal, No. 152, March T., 1925, by plaintiffs, from order of C. P. Westmoreland Co., Feb. T., 1924, No. 636, refusing to take off nonsuit in case of John C. Sondles et al., trading as Bennett & Sondles, v. W. L. Johnson. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Assumpsit on contract. Before DOM, J.

The opinion of the Supreme Court states the facts.

Nonsuit; refusal to take off. Plaintiff appealed.

*Error assigned* was refusal to take off nonsuit, quoting record.

*Charles C. Crowell,* with him *David L. Waldron,* for appellant, cited: Hocking v. Hamilton, 158 Pa. 107; Campbell v. Gates, 10 Pa. 483; Kunkle v. Mitchell, 56 Pa. 100; Baltimore Brick Co. v. Coyle, 18 Pa. Superior Ct. 186.

*Robt. W. Smith,* of *Smith, Best & Horn,* for appellee, cited: Goater v. Klotz, 279 Pa. 392; Meacham v. Gardner, 27 Pa. Superior Ct. 296; Wilkinson v. Ferree, 24 Pa. 190.

OPINION BY MR. JUSTICE KEPHART, November 23, 1925:

Plaintiffs' contract to strip and remove coal contained the following provision: "It is further mutually understood and agreed between the parties hereto that, in case any coal, from which the burden may be removed, is not marketable, and therefore not loaded on cars, the party of the second part shall pay to the parties of the first part......sixty (60) cents per cubic yard for each and every cubic yard of burden removed from said unmarketable coal."

This action was instituted to recover for approximately 5,000 yards of earth so removed. On the trial, evidence was offered tending to establish the unmarketability of the coal; then, without being so required, plaintiffs set up their own rescission of the contract, changing their pleadings accordingly. The provision of the contract, on which the latter action was based, reads: "The party of the second part [defendant] shall furnish orders for at least two hundred (200) tons of coal, per day, to be loaded by the parties of the first part, and in the event of the failure of the said party of the second part to furnish orders for at least two hundred (200) tons of coal to be loaded daily, this agreement shall cease and become null and void, at the option of the parties of

the first part." Plaintiffs' amended pleading, termi-
nating the contract, reads: "That the defendant......
refused to furnish orders for at least 200 tons of coal
per day as provided for in said contract, whereby under
the terms of said contract the plaintiffs had the right
to immediately terminate the same, and did terminate
the same on or about the 29th day of November, 1922,
and gave to the defendants personal notice thereof."
The amendment was supported by plaintiffs' testimony.
It was not necessary to the validity of the claim first
mentioned that plaintiffs should take advantage of this
clause; nor is it quite clear why the contract should be
declared null and void for failure to furnish orders when
the coal was unmarketable. Plaintiffs, however, were
clearly within their rights. When this step was taken
the contract in turn provides a different method for as-
sessing compensation. It reads: "In event such option
is exercised to end the contract......the party of the
second part agrees to reimburse the parties of the first
part in full." Then follows, at the end of the contract
after execution, this supplement: "It is further mutually
understood and agreed between the parties hereto, that,
in case the parties of the first part exercise their option
to terminate this agreement on failure of the party of the
second part to supply orders for at least two hundred
(200) tons of coal per day, as above agreed to, the party
of the second part will pay to the parties of the first part,
at the rate of four hundred ($400.00) dollars, per month,
rental for the period during which the parties of the
first part operate under this agreement previous to the
time of the exercise of said option." All claims for
yardage were merged in the provision just quoted. Hav-
ing changed the substance of the cause, the trial should
have proceeded accordingly. Plaintiffs made no claim
under this clause nor did they offer evidence to sustain a
quantum meruit, if such were possible. It would have
required only the slightest effort to offer in evidence the
measure of compensation stated. No recovery could be

had under the terminated contract except under the last quoted part. Where a party rescinds a contract because of the other party's breach, he may sue in damage for the breach but he cannot rescind the contract and then sue in affirmance of it as though the contract was in full life. 27 S. C. 269.

But the weakness of plaintiffs' case appears in other ways. Claiming the coal unmarketable, they admitted it would have been mined and shipped had defendant guaranteed a car supply. The latter was the question, not marketability. Claiming they did not receive sufficient orders, they acknowledged receipt of an order for 3,000 tons of coal, ample to cover all the then present or future requirements. Plaintiffs, however, were not hurried in the trial. At its close the judge could do nothing less than enter a nonsuit.

The judgment of the court below is affirmed.